Good morning, Your Honors. Caitlin Howard, Federal Defenders, on behalf of Mr. Gonzales. I would like to reserve two minutes if that's okay. Mr. Gonzales' removal proceedings prejudicially violated his right to due process. The immigration judge failed to advise him of his apparent eligibility for Gabrielski relief. At the time of his removal proceedings, Mr. Gonzales was married for a long time to a United States citizen. He could have adjusted his status and concurrently applied for a 212C waiver of inadmissibility, thus making him eligible for relief. Okay, this is so confusing to me. Thank you. Because he was in deportation proceedings, right? That's right, Your Honor. And in order for him to get Gab relief, he'd have to be in inadmissibility proceedings, right? No, Your Honor. Okay. So tell me how he went from deportation. Because my understanding was unless there was a counterpart in the inadmissibility statute that he was not eligible to get relief that he wanted. I understand, Your Honor. Okay. The relief that requires a statutory counterpart and a corresponding ground of inadmissibility is 212C stand-alone relief when it's utilized in a deportation proceeding. Gabrielski relief is a separate and distinct form of relief. But it's still relief from deportation, right? It is, Your Honor. Okay. It effectively converts a deportation proceeding into an admissibility proceeding. And it's a form of relief that can be utilized by lawful permanent residents like Mr. Gonzales who don't have a corresponding ground of inadmissibility. Mr. Gonzales. And where did that procedure come from? Is it in a statute? Your Honor. Or just a creation of the board or what? Your Honor, originally it came from regulation, CFR regulations. Ultimately, the Board of Immigration Appeals in 1993 in the matter of Gabrielski case determined that this was a concurrent form of relief that could be used by lawful permanent residents. Since that time, it has been utilized by both the Board of Immigration Appeals but also confirmed by this court. For instance, in 2011 in Pascua v. Holder, this court found that Pascua was not eligible for 212C stand-alone relief because there was no corresponding ground of inadmissibility for the firearms conviction. But the case did not end there, and that's what the Ninth Circuit found. They found that, in fact, you then move on to the Gabrielski form of relief and determine admissibility along those lines. But I thought before you were eligible for the Gab relief that you had to be eligible for adjustment of status. You don't just jump into the relief, the 212C relief. You first have to demonstrate eligibility for adjustment of status, right? That is correct, Your Honor. And Mr. Gonzalez was eligible for adjustment of status. There are three requirements for adjustment of status. First, that an application be filed. Second, that you be both eligible and admissible, which is where the 212C waiver comes in for Mr. Gonzalez. But at that point, you have to show that I thought you had to show that there was a statutory counterpart in the inadmissibility statute for the crime, in this case the crime of more turpitude, in order to get to adjustment of status and qualify for Gab relief. No, Your Honor. Okay. That would be for 212C stand-alone relief. That would be for the type of relief that this Court was examining in Abebe v. Mukasey and in matter of Blake. This is a separate form of relief. It's a separate line of relief. I don't get it. I mean, I don't get how you can skip the requirement of being eligible for adjustment of status and just wipe that off the requirement list. That's what the 212C waiver of inadmissibility does, Your Honor. The 212C waiver of inadmissibility makes you eligible to adjust status. But only if you're in the inadmissibility context. You're saying that an alien who's in deportation, in the deportation part of the removal statute, is converted automatically to the inadmissibility part through Gab, through that Gab case, right? That is correct, Your Honor. The Gabrielski relief, it's a concurrent form of relief, essentially converting a deportation proceeding into an admissibility proceeding. And it's used for people, lawful permanent residents, who have no statutory counterpart, who are in the same situation as Mr. Gonzalez. Okay. All right. I understand your argument. Ms. Howard, help me out a second. On pages 5, 6, and 7, I think, of your brief, you talk about using the term stand-alone 212C relief. And then you call the 2C, 212C adjustment relief, which is the Gabrielski. That's right, Your Honor. Are those terms used by any court? I'm just curious, because I have not seen them any place other than in your brief. The court uses Gabrielski relief when it discusses this form of relief. Okay. In Pascua v. Holder. So the answer is it's not a term used by the courts? The 212C adjustment was an effort to make it clearer, make the distinction more clear. But the courts use 212C stand-alone, and then they use the Gabrielski relief. But they don't analyze it the way you, I mean, I haven't seen it analyzed the way you're analyzing it here, that the 212C, what you call stand-alone, is a different animal than the 212C that you're talking about in gab relief. I don't see the court saying that the gab relief eliminates the requirements to qualify for adjustment assistance. And that's why I think we have a disconnect. I understand, Your Honor. It does not eliminate the requirements to apply for adjustment of status. In fact, in 212C stand-alone relief, you don't need to qualify for adjustment of status. That is a requirement for just Gabrielski relief. And so Gabrielski relief actually affects a more narrow group of noncitizens. It affects somebody who is eligible to, for an immediate visa, eligible to immediately adjust status, and then also concurrently apply for the 212C waiver of admissibility. In fact, in Pasco versus Holder, this court stated, the BIA has long recognized a remedy known as Gabrielski relief for lawful permanent residents. Gabrielski allows such residents to overcome the statutory counterpart problem by combining an application for adjustment of status under INA Section 245, with an application for 212C relief. The adjustment of status application effectively converts the alien's deportation proceedings into an admissibility proceeding. Right, but it still says they have to be eligible for adjustment of status. And Mr. Gonzalez was eligible for adjustment of status, Your Honor. He was married to a United States citizen. For that reason, a visa was immediately available to him. But what about the crime of moral turpitude? The 212C waiver is applied for concurrently with the adjustment of status, and thus waives the crime of moral turpitude in admissibility. And that's what the 212C waiver originally was intended to do. It's a waiver of inadmissibility. So when you combine it with the adjustment of status, you then are able to overcome that ground of inadmissibility. And that's how the relief would have been granted. And the immigration judge never advised Mr. Gonzalez of his apparent eligibility for this relief. And in doing so... But that's right, Your Honor. Which would then do away with the need to show a comparable criminal statute. That's exactly it, Your Honor. And that's the way that it gets around that requirement with the 212C stand-alone. But you still have to show admissibility. You do, and that's where you use the 212C waiver of inadmissibility. Then to qualify that, the government says, well, even if you get to Gabrielski, you couldn't have shown that he was admissible because he had this criminal history. And, Your Honor, my point for that would be that once you get to Gabrielski and you have the adjustment of status, then the 212C waiver analysis, the discretionary analysis that the immigration judge would engage in, would be the same as if you were doing 212C stand-alone. Got it. And in this case, it's unique because the immigration in this case, judge in this case... Actually did it. Actually did it. He looked at all of the equities. He looked at the crime of conviction. He, in fact, used the heightened standard for a serious crime, which was outstanding or unique circumstances and rehabilitation. And in examining all of that, he found that the conduct of Mr. Gonzalez after this conviction, that he had led, his words, an exemplary life after this conviction, and that, in fact, that he would, should be granted that form of discretionary relief. And that same analysis would be done with Gabrielski once you have that adjustment. Yeah. In the original Gab case, was there a 212C? What was the 212C relief sought? What was it waiving? It was, I believe it was waiving a firearms offense, Your Honor. Okay. And subsequent to that, the Gabrielski release has actually been utilized to waive inadmissibility in cases where the same statute of conviction as Mr. Gonzalez's, the 288A conviction, existed. The BIA has remanded numerous fines for the immigration judge to consider Gabrielski relief. All right. Can I ask one thing? Please. Two decisions, the Blake decision and the ABB decision? Yes, Your Honor. From this court. How do you deal with those? Because they seem to indicate that there's a trend away from allowing this Gabrielski type of relief. Even though they didn't, I understand, they didn't talk about that relief. I understand, Your Honor. In fact, the ABB decision and the matter of Blake decision are really dealing with the different form of relief. The stand-alone. The stand-alone. And in those cases, that is what's being analyzed, and in those cases, that is what's being sought by the noncitizen, the 212C stand-alone. Perhaps they couldn't have adjusted. They didn't have a U.S. citizen spouse like Mr. Gonzalez did. And so, in fact, the fact that in those cases, in ABB, the court found that the statutory counterpart rule didn't violate equal protection, that it still was allowed to be used, which the Supreme Court in Judling v. Holder ultimately found that that standard. But, you know, the government is relying on those two cases. The government is relying on those two cases. Okay. So what do you say to the government in the court to show that we shouldn't be concerned about Blake and ABB? Those two cases deal with a different form of relief, Your Honor. They deal with the 212C stand-alone. They don't discuss Gabrielski. They don't discuss this form of relief. Since ABB, this court has actually remanded for a determination on eligibility for Gabrielski. It's a separate form of relief. Is this where, in your view, the district court went off astray? It is, Your Honor. He did rely, the district court relied on ABB v. Mukasey and on the matter of Blake, and that is a separate and distinct form of relief from what we believe that the immigration judge should have advised Mr. Gonzales of. All right. Thank you, counsel. We'll hear from the government. You've exceeded your time, but we will give you one minute for rebuttal. Thank you. All right. Good morning. May it please the court, Charlotte Kaiser on behalf of the United States. As it turns out, the judge I clerked for apparently was on your confirmation panel as well. Interesting. That was. Judge Lesko. I sat next to her. They had me on the far end, so like I said, it was all a blur. It sounds like it was a good day for justice in America. In some respects, and not necessarily in all respects. I'm happy to discuss the intricacies, but we don't even have to go there. Good. Because the record as it stands is the outcome of the proceedings would not change. And there are two reasons as to why the outcome of the proceedings would not change. Is the court as well aware of this? Are you going now to the merits? The merits. Not whether Gabrielski relief is available. And, Your Honor, I would still maintain it wasn't available. I understand that, but that's where you're not going to shift to. Yes. I'm going to just start off and just say we don't have to get into this, okay? As the court is well aware, Gonzalez-Valero, prima facie case, burden shifts to the government. And we can meet that burden. And there are two ways that the burden is met. First is the misrepresentations made by the defendant during the immigration proceedings on the record. He testified that the age of the victim was 14. Well, his conviction was lewd act on a child under the age of 14. And the child, according to the probation report, which is also included on the record, was actually 12 at the time. He also testified that the incident occurred one time. And according to the probation report, the defendant admitted that this occurred over 22 times in a span of, I believe, several months to a year. It started in March 1989. So it actually started in March 1989, which was before he actually interviewed for his visa petition. So, counsel, is your point that there is no way this petitioner would have been able to adjust status because of the misrepresentations? Is that your point? My finding of discretionary relief was on, was, yes, it was on, based on the idea that this defendant has rehabilitated himself. As appellant counsel had indicated, it's unusual outstanding equities analysis, so it's a heightened standard. But you're asking us then to, in essence, reverse the decision, the discretionary decision, or say that the IJ should not have made that decision? What we're asking is not necessarily reverse, but to say this wouldn't change the outcome of the proceedings based on the record that we have before us. Well, the standard is a plausible case, not an absolute case or even a 50-50 case or a preponderance. It's a plausible case, right? With all due respect, that is for the defendant to make in the 1326, is the plausible ground. But as Gonzalo Valero indicates, then the burden shifts to the United States to say, does this change the outcome of the proceedings? And it wouldn't change the outcome of the proceedings because he may be so. Let me stop you there. I think the question is pretty pertinent. Are we now going to be an appellate court deciding that the immigration judge should have considered these other factors that he wasn't even asked to consider 10 years later? Yes. And the courts do this all the time. The bottom line is, as Gonzalo Valero says, burden shifts to the government. After the defendant has made the prima facie showing of a plausible ground of relief, the burden shifts to the government to say, would this change the outcome of the proceedings? And the answer is no, it would not change the outcomes of the proceedings. He made multiple misrepresentations. And interestingly enough, in response to that, what appellants had said in its reply brief was, well, this is speculative. And they cite to a case saying we do not step into the I.J.'s shoes and reweigh the facts. But that case actually isn't applicable because it deals with the Ninth Circuit's jurisdiction to review a decision on a ruling as to the exceptional and extreme hardship where the BIA relied on an existing precedent. The case was Mendez-Castillo, I believe. And as we cited in our brief, sigh beholder, really what's at issue is by necessity much of the immigration decision depends on the aliens telling the truth when they seek relief. When appellants deliberately lie, trust is broken. Let me stop you. What's concerning about this is you're now making your main argument, as I understand it, the argument that I thought was a kind of a second or at least maybe a tertiary argument at page 30 of your brief. And now you're developing facts I don't recall reading in the brief. I mean, there's some of them I recall in the brief, but not all of those. Those I believe were in the brief where we indicated that he, there was a conflict with the probation report. As to the nature of the sexual act. As to what he, nature of the sexual act as to what he represented to the immigration judge. And the immigration judge's finding was essentially this defendant has rehabilitated himself, but the bottom line is that he can't show rehabilitation if he's misrepresenting what actually occurred there. Could you, I have to tell you, that argument is not resonating with me. Could you go to the GAB argument just so I can have some? Absolutely. All right. Okay. So in actuality, all, your Honor asked how to explain the history of Gabrielski. And in reality, all roads lead to Francis versus INS. I was rereading the cases again. And Gabrielski, I think, cited cases that relied on that. Azaran cited Francis versus INS. It's a Second Circuit case that basically said there's no equal protection, there's an equal protection violation. If you have a lawful permanent resident who is in deportation proceedings, and they can't seek the 212C waiver, versus a lawful permanent resident who leaves the country and then comes back, they can seek that waiver. So we're looking for the inadmissibility deportation. And it's the wording of 212C. So Francis versus INS said there's an equal protection violation. So what we're going to say now is you can convert deportation proceedings to inadmissibility proceedings. What happened, though, in a BB2 is in the 2009 case was the Ninth Circuit came back and said, actually, we don't find that there's any violation here. They overruled Taffia versus Acuna, a 19-year-old. But that didn't overrule the Gab case. So actually, Your Honor, it does. Well, actually, it didn't expressly. So you're asking us to say that it overruled by implication. And, Your Honor, there's that indication in the record. Pascula versus Holder, footnote 2, 212C for leave remains available as a remedy from deportation. And then what it says is a BB suggests that 212C relief is only from inadmissibility. And what a BB2 had said, and the concurrence for a BB, which Your Honor joined in in the concurrence there, basically said, well, what's going to happen now? Because in a BB2, what the majority said was, but we still have these regulations. Well, Julian came along and said those regulations are arbitrary and capricious. And so this Court has said in its other decisions, in fact, in Morial Luna, I believe, Your Honor, had said at some point that a BB2 calls into question about the applicability of being able to adjust status and seek 212C relief. Okay. If I do not think that by implication the Gab case has been overruled, where does that leave you? In terms of your argument, do you lose if Gabrielski is still good law? No, Your Honor. Why not? Because there was no visa petition immediately available. What we have here is essentially a reverse Morial Luna case, where he was married at the time of the proceedings, and page 86 of the excerpts of record, the wife filed a declaration in 2011, and she says basically, I would have, we were married from 1988 to 2008, and on March 17, 2006, I would have filed any applications to make this available. Well, the bottom line is, is that they were divorced in 2008. So when he would have adjusted status, they would have been subject to conditional status, basically a two-year term limit. So do you agree with opposing counsel that there is 212C stand-alone waiver, and the combination of the 212, and I think it's 255 that's in Gabrielski, do you agree with her description of there being two different procedures? How there's the two different lines in that respect? Yes. Okay. I mean, I think that defense is, I think where we agree to the extent is there's the lining of 212C stand-alone, and then the adjustment with the 212C, but a BB2 basically came along and explained that you can no longer, that basically there's no equal protection violation. By overruling TAPIA versus ACUNA, there's no equal protection violation, and that 212C relief applies only to lawful permanent residents, and this was a non-procurement decision, who go temporarily abroad and come back. And so how can you adjust status during a deportation proceeding? It does make it technically into an admissibility proceeding, but then you can't seek the 212C relief because you haven't gone temporarily abroad. So that's what a BB2 does. But that's what Gab said, that you can convert the deportation, I mean, it's a legal fiction. You're converting the deportation proceeding into an admissibility proceeding. Well, that's what it sounds like, but in reality, all roads point to Francis v. INS, the Second Circuit case, which the Ninth Circuit relied on on TAPIA versus ACUNA, which this Court on Bach Pecureum relied on and overturned in a BB2. Interestingly enough, in a footnote, footnote 3, appellant says, other unpublished and published decisions from this Court confirm ongoing availability of 212C adjustment of status post-Blake and post-ABB. But only two of those cases are actually post-ABB. All the rest were pre-ABB. Roberto v. Pascala actually was inapplicable because it dealt with the SILI adjustment, and then there was Guzman v. Holder, and interestingly enough, Guzman v. Holder was a motion to reopen. I believe that there had even been a petition already filed and pending. And so essentially what we have to do is we have to the problem here is that there was no petition immediately available. And here's the problem. One, it would depend on the. If he had been advised, the wife said she would have then applied concurrent with his 212C application and his request for adjustment. The wife was never subject to cross-examination. But isn't that the case, though? I'm sorry? Whether she was subject to cross-examination or not, isn't that probability? But then let's assume she actually applied for the petition. It still would not have been immediately available at that time. There's administrative processing. There's no cap. There's a preference for that kind of visa, correct? There is. So that would go to the top of the list, so to speak. It would. Okay. So you're saying it has to be the next day or something like that, or a reasonable period of time for the wife to go and make the application and have that process, you know, go through? Yes. And assuming she actually did the process, here's the thing. Let me ask you this. As an officer of the court, do you agree that there is this difference between the stand-alone 212 and what defense counsel says is the 212C adjustment, the Kapileski? There's two separate paths. Not anymore. Not based on a BB-2. Okay. But at one time, when this happened, there were two separate paths with two separate standards. There was. Okay. Do you also agree that the district judge did not consider the Kapileski in the sense that it's a, as described by counsel, that it no longer required the statutory counterpart? A reading of that would indicate to me that. Is that a yes or no? Okay. I guess I would say. Because I didn't see it in there. Yes. I would agree. I would agree with Your Honor. I would say this, though. And didn't the district judge rule on that basis, basically? The district judge did rule on the basis, but the district judge did acknowledge a BB-2. Which didn't deal with Gabrielski, right? Well, it does go directly to BB-2. It didn't cite to be Gabrielski, but. Didn't rely on it, didn't distinguish it, didn't overrule it. Because that BB-2, because it was a 212C stand-alone case. Right. It was something separate. Okay. I think we've got it. Can I just have one more minute? Yes. You said there were two points. Even if Gabrielski was available, that there were two reasons. One was this misrepresentation, and I looked again at your brief. Actually, it was the very last argument, page 34 and 35, when you talked about misrepresentation. Yes. Now, what was the second point? Was it the no visa immediately available, or was there something else? I would say no visa available, but I would also remind the court in that respect that they got divorced in 2008, so there would have been a conditional basis, which would not have applied anymore once they got divorced. Is that discussed in your brief? It's not discussed in my brief. It's in response to the reply brief, though, Your Honor. I think what we have to do is we have to put this layer of layer of what I would have, could have done, and she never applied for a petition. And a lot of these cases, which are relied on in the reply brief, delve into the fact of there's a motion to reopen pending, a relative has filed a petition, and that's not what happened here. All right. Thank you, counsel. You've exceeded your time. Thank you, Your Honor. Rebuttal. Just briefly, Your Honor. Thank you. The government now asserts that a visa would not have been immediately available because Mr. Gonzales and his wife divorced in 2008. However, at the time of the immigration proceedings, they were not divorced, and they had actually been married for almost 20 years. Mr. Gonzales' wife testified on his behalf at the immigration proceedings. The divorce was subsequent to that, and subsequent, I would note. Two years subsequent, right? Two years. I apologize. But also subsequent to the order of removal being entered against Mr. Gonzales. The fact that the immigration judge failed to advise Mr. Gonzales and his wife of his eligibility for Gabrielski relief, where she could have filed this petition and adjusted his status, and then he could have applied for a 212C. Do you want to comment briefly on the misrepresentation that counsel puts a lot of work to? Your Honor, I would like to comment on that. The government asserts that Mr. Gonzales misrepresented things at his immigration hearing. The basis of this assertion is on a probation report written in 1990, a probation report that Mr. Gonzales was never impeached with or cross-examined on, and a probation report that states that Mr. Gonzales made statements in a signed writing. The signed writing is not attached to the probation officer's report. So it's unclear where those facts come from. But I will say that the state court judge who sentenced Mr. Gonzales in 1990 for this offense. Is this in the record? Yes, Your Honor, where I'm going. What the state judge said? It's not what he said. It's what he did, the sentence, and it is in the record. The state court judge who was the closest to the underlying facts in this conviction had that probation officer's report, reviewed it, reviewed all the facts, and found that this was a case where probation was the appropriate sentence. And he sentenced Mr. Gonzales to a term of probation with 365 days of work furlough, which Mr. Gonzales successfully completed. Well, that could have been because of the misrepresentations that were made that counsel is referencing. But what I wanted to ask you is whether or not you agree with opposing counsel that Abebe at least implicitly overruled the Gap case. I don't agree with that, Your Honor. Abebe deals with the 212C standalone relief. That is what was being sought, and that is what was being analyzed. And essentially what the petitioners in those cases were saying is that this corresponding ground of inadmissibility test, the statutory counterpart test, violates our right to equal protection, because we don't qualify now for 212C relief. Those individuals weren't likely eligible to adjust status, but didn't try to adjust status. So they weren't applying for Gabrielski relief, likely because they weren't eligible. And so that is what Abebe said. That's not an equal protection violation. Now, that line of cases ends at Judling v. Holder, where the United States Supreme Court said, arbitrary and capricious, you can't use that anymore. But that's not what's happening in the Gabrielski line of cases. And, in fact, post-Abebe II, post-2009, this Court, in fact, did the 212C inadmissibility analysis, the standalone, and then said, but we don't end there. Now we move on to Gabrielski, and they remanded for a determination of whether or not that individual was eligible for Gabrielski relief, indicating just in that one case the different forms of relief that are available here. And that's post-Abebe. And I think for that reason that Abebe has no effect on the Gabrielski line of cases. All right. Thank you, counsel. Thank you to both counsel. Thank you. The case just argued is submitted for decision by the Court. Thank you.
judges: Huck, Gould, Rawlinson